UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80089-CIV-HURLEY
MAGISTRATE JUDGE P. A. WHITE

LEVERT HERRINGTON,                    :

        Plaintiff,            :

v.                                    :            REPORT OF
                                                 MAGISTRATE JUDGE
OFFICER SCOTT SPRUILL, et al.,:

        Defendants.           :
_____

## I.   INTRODUCTION

The plaintiff, Leveret Herrington, a/k/a Leveret Harrington, a/k/a Levert Herrington, a/k/a Lavert Herrington, who is now con-fined as a state prisoner at South Bay Correctional Facility, filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983, alleging that he was subjected to the excessive use of force upon his June 1, 2006 arrest by officers from the Boynton Beach Police Department (BBPD), allegedly resulting in injuries to his head, abdomen, arm, and back.[1] Herrington also has asserted that officers lacked probable cause to stop him; and that they failed to provide him access to medical care immediately following the uses of force. After prior reports (DE#s 4, 25) and Orders (DE#s 7, 16, 36), the operative complaint, which consists of the initial verified complaint and a sworn amendment thereto (DE#s 1, 22) is pending against five BBPD Officers. The defendants are: Scott Spruill, Jay Harris, and Matt Zeller, whom the plaintiff claims tasered him, and kicked him while he was incapacitated; and Russell Faine and Joseph Crowder, whom he claims were in a position to intervene and stop alleged unnecessary force, but failed to do so.

**This Cause is before the Court upon a motion for summary judg-ment (DE# 43) filed jointly by defendants Spruill, Harris, Zeller, Faine and Crowder,** with a Statement of Undisputed Facts (DE# 44), and multiple exhibits (at DE#s 44-2 and 44-3). An Order of Instruc-tions was issued advising Plaintiff Herrington of his right to

_____

[1]    Records pertaining to Herrington, which are maintained by the Florida DOC as a matter of public record on its Internet website (at www.dc.state.fl.us) show that his committed name is Lavert Herrington.

respond.[2] Herrington filed a Response consisting of a Brief in Op-

---

[2]    Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).
    Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir.1987), an Order of Instruction (DE# 45) was entered, informing plaintiff Herrington as a *pro se* litigant, of his right to respond to the defendants' motion for summary judgment. The Order specifically instructed plaintiff Herrington regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion.

position (DE# 46), a "Statement of Disputed Facts" (DE# 47), and
Exhibits (DE# 48); and defendants filed a Reply (DE# 50). The de-
fendants argue that the force they used was reasonable under the
circumstances, and that they are entitled to qualified immunity.

## II.   __THE CLAIM OF EXCESSIVE FORCE__

A §1983 claim such as Herrington's, that a law enforcement
officer used excess force in the course of an arrest, investigatory
stop, or any other seizure of a free citizen, arises under the
Fourth Amendment, and is to be analyzed under the "reasonableness"
standard as enunciated in the Supreme Court's opinion in Graham v.
Connor, 490 U.S. 386 (1989), and its progeny. See Vinyard v.
Wilson, 311 F.3d 1340, 1346-47 (11 Cir. 2002); Lee v. Ferraro, 284
F.3d 1188, 1197 (11 Cir. 2002); Ortega v. Schram, 922 F.2d 684, 694
(11 Cir. 1991). Just as a claim of excessive force by an arresting
officer is cognizable under §1983, so too is a claim that an offi-
cer who did not use force, but was present, failed to intervene to
prevent unconstitutional force by a fellow officer, if circum-
stances were such that intervention was possible. See Fundiller v.
City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985).

The analysis requires a court to balance "the nature and qua-
lity of the intrusion on the individual's Fourth Amendment inter-
ests against the importance of the government interest alleged to
justify the intrusion." Graham, supra, quoting United States v.
Place, 462 U.S. 696 (1983). The factors a Court considers when bal-
ancing the necessity for an application of force against an ar-
restee's constitutional rights include: (1) the severity of the
crime at issue; (2) whether the suspect poses an immediate threat
to the safety of the officers or others, and (3) whether the sus-
pect is actively resisting arrest or attempting to evade arrest by
flight; Graham, supra, 490 U.S. at 396; Vinyard, supra, 311 F.3d at
1347; Lee, supra, 284 F.3d at 1197; Ortega, supra, 922 F.2d at 695.
In determining whether force applied was "reasonable" under the
circumstances (i.e., proportional to the need for its use), the
Court must examine: (1) the need for the application of force; (2)
the relationship between the need and the amount of force that was
used; and (3) the extent of the injury inflicted upon the indivi-

dual to whom the force was applied. <u>Vinyard</u>, at 1347; <u>Lee</u> at 1998.
The "reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. <u>Graham</u>,
<u>supra</u> at 389.[3]

If the force applied was reasonable under the circumstances
and not excessive, the police officer has not violated any clearly
established constitutional right, and is entitled to summary
judgment based upon qualified immunity. <u>Moore v. Gwinnett County</u>,
967 F.2d 1495, 1498 (11 Cir. 1992), <u>quoting</u>, <u>Leslie v. Ingram</u>, 786
F.2d 1533, 1536 (11 Cir. 1986). The defense of qualified immunity
insulates governmental officials from personal liability for
actions taken pursuant to their discretionary authority. <u>See</u>:
<u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Harlow v. Fitzgerald</u>, 457
U.S. 800 (1982); <u>Flores v. Satz</u>, 137 F.3d 1275 (11 Cir. 1998); <u>Foy
v. Holston</u>, 94 F.3d 1528 (11 Cir. 1996).

Regarding the use of a taser, the Eleventh Circuit, while
noting that "being struck by a taser gun is an unpleasant
experience," nonetheless held in <u>Draper v. Reynolds</u>, 369 F.3d 1270,
1278 (11 Cir. 2004) that, based on the facts of that case, "a
single use of the taser gun causing a one-time shocking was
reasonably proportionate to the need for force and did not inflict
any serious injury." The Court in reaching its holding noted that
the §1983 plaintiff/arrestee Draper had been encountered during a
traffic stop, had no less than 5 times refused to retrieve
documents from his truck cab, was using profanity, "moved around
and paced in agitation," and repeatedly yelled at officer Reynolds
before Reynolds struck him with the taser. The Court noted that
"under these circumstances the single use of the taser gun may well
have prevented a physical struggle and serious harm to either [the

---

[3]      Although the test applied by the Eleventh Circuit previously
included a subjective prong, examining whether the force was applies
maliciously, <u>see</u> <u>e.g.</u> <u>Leslie v. Ingraham</u>, 786 F.2d 1533, 1536 (11 Cir. 1986),
that factor has been eliminated from the analysis by <u>Graham</u> and other cases
establishing that the excessive force inquiry should be completely objective,
thereby excluding consideration of the Officer's intentions. <u>Lee</u>, <u>supra</u>, 284
F.3d at 1198 n.7.

arrestee or the officer]."  A 2007 district court opinion from the
Southern District of Alabama, <u>Stephens v. City of Butler, Alabama</u>,
509 F.Supp.2d 1098, 1112-13, citing <u>Draper</u>, however, found based on
the facts and circumstances in the arrestee Stephens' case (which
included 5 taser "trigger pulls" by two different officers, where
the arrestee was making no effort to escape, was surrounded by
officers, and made no movement that would be deemed an attack upon
or threat to officers), that the use of force was "objectively
unreasonable and excessive," and that a reasonable inference could
be made that the second officer who used his taser after a first
officer had already shocked Stephens several times "simply 'piled
on.'"  The events in the <u>Stephens</u> case took place in September
2004, and the district court found that the state of the law in the
Eleventh Circuit, including the opinion in <u>Vinyard v. Wilson</u>, 311,
1340 (11 Cir. 2002) which involved the spraying of a detainee
multiple times with pepper spray while in custody and not posing a
threat to the officers, gave law enforcement officers fair warning
that repeated use of force on a non-violent arrestee may be deemed
excessive and a violation of the Fourth Amendment. As noted in the
Alabama district court opinion in <u>Stephens</u>, which involved tasers,
the Eleventh Circuit in 2002 in <u>Vinyard</u> made it clear that under
certain circumstances, even when the peculiar facts of a case faced
by an officer who has used force are not exactly on point with
prior precedent [e.g. that <u>Vinyard</u> involved pepper spray, not
tasers], the prior precedent, involving a different mode of force
or set of facts is still sufficient to put the officer on notice
that his use of force is unconstitutional. <u>Stephens</u>, <u>supra</u>, 509
F.Supp.2d at 1112-13. <u>See</u> <u>Vinyard</u>, <u>supra</u>, 311 F.3d at 1355 (holding
that the defendant officer was not entitled to qualified immunity,
because  "[t]he peculiar facts of this case are 'so far beyond the
hazy border between excessive and acceptable force [that every
objectively reasonable officer] had to know he was violating the
Constitution even without caselaw on point,'"(quoting <u>Priester v.
City of Riviera Beach</u>, 208 F.3d 919, 926 (11 Cir. 2000)).

      In the present case, it is undisputed that on June 1, 2006, at
about 7:25 a.m., Officers Spruill, Harris, Zeller, Crowder and
Faine were on patrol in Boynton Beach. Near 10th Avenue, Harris and

Zeller observed a Black male [plaintiff Herrington] and approached him. Officer Spruill, who also approached, states he recognized Herrington as the man in a photograph which had been distributed by the Palm Beach County Sheriff's Office (PBSO), who was a suspect wanted in PBSO Case #06-312 for the sale of rock cocaine. For that reason Spruill asked Harris and Zeller to get his [Herrington's] name. Herrington states that he was with two other men (Tony Sanders and Mike Simpson), and that the officers approached and asked for their names. [According to Spruill, Herrington gave a false name, stating that he was Marvin Hall. When a name check gave no results, Spruill approached and questioned Herrington. He stated that Spruill had misunderstood, and that his name was Melvin Hall. Spruill returned to his vehicle to run another name check]. Herrington states that Sanders began to run, and acknowledges that he too fled from the officers, and ran through an apartment complex toward 11th Avenue. It is undisputed that there, plaintiff was intercepted. He states that backup patrol cars had pulled up and blocked his path, and that he stopped running, and stood still.

It is also undisputed that Herrington was told to get on the ground, and that he was apprehended and handcuffed; however, the defendants' and Herrington's versions of the facts surrounding his apprehension and placement in restraints are diametrically opposed.

Although affidavits are not required for a movant's initial showing in support of his/her motion for summary judgment (see Hoffman v. Allied Corp., supra, 912 F.2d at 1382), in this case the defendant officers have submitted three exhibits which are sworn documents. The first [Defendants' Ex.C-1] is a probable cause affi-davit executed by Officer Spruill on 6/1/06, charging Leveret Harrington with commission of two offenses on 6/1/06: Resisting Arrest Without Violence, and Obstruction of Justice (DE# 44-2, at p.20 of 23). The second [Defendants' Ex.D-1] is an Information filed in the Circuit Court for the 15th Judicial Circuit of Florida, at Palm Beach County [Case 06CF007312A02; Booking No. 2006027565] charging that on May 4, 2006, Leveret Harrington [DOB 1/23/79] did unlawfully sell, manufacture, deliver or possess with

intent to sell, manufacture, or deliver cocaine or ecgonine. The third sworn document [Defendants' Ex.D-2], is a PBSO Probable Cause Affidavit executed by Spruill, charging Leveret Harrington with Sale of Cocaine on May 4, 2006 during an undercover sting operation in which Agents purchased crack cocaine weighing approximately 0.5 grams from Harrington, in exchange for two twenty dollar bills.

Other of defendants' exhibits, related to Herrington's 6/1/06 arrest, including BBPD Incident Reports by Spruill, Harris and Zeller, Use of Force Reports by Spruill and Zeller, and Spruill's Arrest Report, are not sworn or authenticated. The essence of Spruill's Incident and Use of Force Reports, however, is incorporated in his sworn Probable Cause Affidavit. Defendants' exhibits do not include a copy of BBPD policy guidelines regarding use of force in general, by its officers, or regarding their use of tasers.

Herrington's Response (DE# 46) and Statement of Facts (DE# 47) are not in affidavit form, and are not themselves sworn under penalty of perjury. Relevant facts stated in Herrington's Response, however, are also stated by him in his sworn Amendment to the complaint (DE# 22). As such, in a case like this, where plaintiff is proceeding *pro se* and is unschooled in the law, the sworn Amendment [DE# 22] should be deemed to suffice as an affidavit in this summary judgment proceeding, because it contains fact statements by Herrington which are based on personal knowledge, thereby satisfying requirements of <u>Fed.R.Civ.P.</u> Rule 56(e).[4]

---

[4]     <u>See</u> <u>Gordon v. Watson</u>, 622 F.2d 120, 123 (5 Cir. 1980) (<u>pro se</u> "Answer to Defendants' Motion For Summary Judgment," which was an unsworn statement, failed to comply with Rule 56; but had it been sworn it would have raised a genuine issue as to material fact); <u>Fowler v. Southern Bell Tel. & Tel. Co.</u>, 343 F.2d 150, 154 (5 Cir. 1965) (verified pleadings may be treated as affidavits in summary judgment proceedings, if they meet the standards for affidavits laid down by <u>Fed.R.Civ.P.</u> 56(e), and set forth facts based on personal knowledge, and do not simply state legal conclusions). *Accord* <u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262-63 (1 Cir. 1991) (citing cases, including <u>Fowler</u>, 343 F.2d at 154) (sworn pleading, satisfying requirements of Rule 56(e), is treated as equivalent to a supporting or opposing affidavit).

    The <u>Sheinkopf</u> Court, as a matter of first impression in that Circuit, addressed the question whether or when a verified complaint can serve in lieu of an affidavit for purposes of opposing a summary judgment motion. The Court acknowledged that cases where a verified pleading will suffice are "rare," <u>Sheinkopf</u> 927 F.2d 1262 (citing 6-Pt. 2, J.W. Moore & J.C. Wicker,

Defendants assert that Herrington was recognized as a suspect wanted for the sale of a small quantity of crack cocaine which had taken place nearly a month before, and that when questioned he twice gave false names, and ran. They assert that when he was stopped a second time, where police cars apparently blocked his path one avenue away, he repeatedly refused verbal orders to get down on the ground. They assert that he was then "forced to the ground," that he refused orders to put his arms behind his back, and resisted by assuming a push-up position and repeatedly attempting to push himself up. (PC. Affidavit). In his PC Affidavit Spruill states that in an attempt to force him to the ground, he struck the plaintiff several times with his closed fist in the meaty part of his arm. [In his unsworn Incident Report, Harris states that he did the same]. Spruill in the PC Affidavit states that Herrington "continued to attempt to get up several times, and eventually was taken into custody after the successful deployment of the M-26 Taser," and was then handcuffed and arrested for resisting arrest. The unsworn Incident Reports by Spruill and Harris speak of the use the taser weapon in the passive voice, and do not indicate which officer or officers struck Herrington with a taser, or how many times he was shot with probes and shocked. Zeller's unsworn Incident Report makes clear that he shot (tasered) Herrington twice, without success, first striking him in the lower left back, and then in the upper left shoulder, both times without success. [Zeller states that "my drive stun attempts lost contact with the subject and had to be reapplied due to him flailing his arms and attempting to break away from officers"]. Zeller also indicates that Herrington was shot at least a third time, but does not clearly indicate by whom (stating "After applying another drive stun maneuver Officers were able to detain the B/M"). Answers by an undetermined defendant to Interrogatories apparently propounded by

---

Moore's Federal Practice ¶56.22.[1] at 56-741); but held that "[w]e think the better rule is that a verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)(in summary judgment milieu, affidavits 'shall be made on personal knowledge, shall set for such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein')" Id., 927 F.2d at 1262 (quoting Fed.R.Civ.P. 56(e)).

the plaintiff [DE# 48, Plaintiff's Ex.C-2] indicate that "a taser
was applied three times to overcome resistance and gain control to
handcuff to arrest" [Id., Answer to Interrogatory 10];" and that
the officers did have in their possession mace, pepper spray or
some other spray that could have been used to control the plaintiff
[Id., Answer to Interrogatory 11].

Plaintiff Herrington, in his amendment, which is sworn under
penalty of perjury, states in pertinent part that after he had run,
and encountered two officers [who he states were later identified
as Crowder and Faine], they already had their taser guns out and
were yelling, "get on the ground." Herrington states that he
"dropped on both knees and placed his hands in the air over his
head." He states that he asked "why are you chasing us?", and one
of the two officers [Crowder or Faine] shot him with his taser,
which "temporarily paralyzed the large muscle of his body."
Herrington states that this rendered him "helpless for a few
seconds," and that "these officers begin kicking." He states that
Officers Spruill, Harris, and Zeller "continued tasing and kicking
[him] causing head injuries laceration to the scalp, abdominal and
back area." He states that while he was "already helpless," Harris
and Zeller "continued firing their taser along with Officer
Spruill" and that "as these 3 officers continued administering
electrical shocks and kicks to [him] his nose began to bleed...This
came from multiple taser and kicks."  Herrington further states
that Crowder and Faine "never once tried to stop it." He further
states that he was "called racial taunts threw [sic] the ordeal
just for the reason of running." Herrington further states that
"during this instant [he] complained of continuing discomfort from
his lower back, face, and chest where it was marred with abrasion."
He states that he "was in pain and informed these officers that he
needed medical attention" and that although they "had subjective
knowledge" of his "request for the need of medical attention" ...
they denied his request. These statements, taken as true, are
statements by the plaintiff based on personal knowledge.

In his sworn Amendment, treated as an affidavit for purposes

of this summary judgment proceeding, Herrington asserts that he was shot with tasers by no less than 4 of the officers, and was "Tased" multiple times: [initially, one time by Crowder or Faine], and thereafter by the three other officers [Zeller, Spruill and Harris]. After being temporarily incapacitated by the initial taser shock [Crowder or Faine], the other officers [Zeller, Spruill, and Harris] while allegedly uttering racial remarks, continued Tasing him and kicking him about the head, abdomen and back while he was under the effects of the additional taser shocks.

Herrington further states that the Tasing and kicking occurred after he had dropped to his knees and put his hands up, when ordered to get down on the ground, and that Crowder and Faine failed to intervene as Zeller, Spruill and Harris continued to Tase and kick him while he was already under effect of taser shocks.

The defendants, in contrast, indicate that when he refused to get down, he was thrown to the ground, and that officers then used fists to strike his upper arms in attempt to make him lie flat and not use a pushup maneuver. The defendants state that only then was the taser device used on Herrington.

Herrington has not refuted the defendants' evidence that Spruill had recognized him as a suspect wanted by the PBSO for a drug offense in Palm Beach County, an offense for which Herrington subsequently plead guilty, and now stands convicted. Although the officers under the circumstances clearly had arguable probable cause, if not actual probable cause to arrest Herrington on June 1, 2006 (see §IV, and n.6, below), it is not clear from the record that he posed a serious risk of harm to the officers or the public. Although Herrington admittedly had run when initially confronted by officers, the drug offense was for a very small quantity of crack cocaine [0.5 grams] and had taken place nearly one month earlier on May 4, 2006. There is no allegation or suggestion that Herrington was armed; and it does not appear that at that point he realistically posed a risk of flight. (The plaintiff states that he had dropped to his knees and put his hands up before force [Tasing

and kicking] was applied; and even under the defendants' version of
the facts, after Herrington had been taken to the ground and was
allegedly using his arms in pushup fashion to resist lying flat,
which made it difficult for officers to apply handcuffs, he was
being actively controlled by no less than two officers [Harris and
Spruill] and was surrounded by others. When Herrington was charged
with resisting (see Spruill's PC Affidavit, Ex.C-1; and Plea, Ex.E-
3) it was for resisting <u>without violence</u>).

     The Court has not been presented with sufficient evidence to
determine the full nature and extent of Herrington's injuries. The
defendants' sole medical exhibit is their Exhibit H-1 at DE# 44-3,
Captioned "Injured Subject to be Booked," generated at 11:30 a.m.
on 6/1/06, some four hours after the plaintiff's arrest. This
document states that Herrington was "Seen by Nurse Betty per
Protocol," and indicates that treatment was not provided. The same
document indicates that photographs were taken: "2 photos of Left
Underarm, (1) Right Elbow, (1) Facial," and defendants submit at
Ex.H-2 a picture of plaintiff's face and another of his elbow.
Although the scanned image is far from clear, there appears to be
a bandage on Herrington's forehead.  Officer Spruill is listed on
this document as being the "Transporting Officer." Spruill's PC
affidavit indicates that "the B/M [Black Male, Herrington] was
restrained, the cuffs were checked for tightness, and that he "was
transported to BBPD for processing." [It is noted, in Zeller's
Incident Report, that it was in fact he who transported Herrington
from the scene of his arrest to the BBPD, and that there, Zeller
waited for Herrington's arrival; It is further noted that Zeller
states in his "Incident Supplement" that "I conducted an evaluation
of Farrington [sic] body for injuries from the contact stuns" and
that "I did not notice any injuries except of superficial redness
in the area where my M26 Taser made contact with lower back and
upper left shoulder." Zeller further states in the supplement that
"Farrington [sic] did not complain of any pain in these areas."

     There are no notes or medical documents submitted by the
defendants indicating medical findings by Nurse Betty or any other

medical staff member.

Plaintiff apparently was seen by jail medical staff on 6/1/06 at about 11:45 a.m. His Exhibit F-1 is a "Medical Receiving Inter-mediate Screening" form, with answers to questions, to which Herrington answered "Yes," when asked if there was anything wrong with him, and if he had any "open wounds" or "skin problems." An entry on the document indicates that the open wound was on the "Head."

The plaintiff's own exhibits, submitted with his Response, also include Armor Correctional Health Services medical Referral forms dated 6/1/06 related to "right shoulder trauma," 6/9/06 related to continued pain after being shot with tasers, and 6/11/06 related to "Generalized body ache" from being Tased. The plaintiff, with his Response, also has submitted multiple photographs, which like the defendants' are not clear images.[5]

Additional documents submitted by Herrington show that he was seen by Armor Correctional Health Services on 6/22/06, some three weeks after the 6/1/06 arrest/use of force, for a 4" linear abrasion on the left shoulder. The notations indicate that there was no "active bleeding or drainage," but that the "skin integrity" of the epidermis was impaired, there was "risk of infection," specifically MRSA [Methicillin-resistant Staphylococcus aureas].

Finally, Herrington has submitted copies of medication charts with entries indicating that in June 2006 he received an antibio-tic, Amoxil; a muscle relaxer, Baclofen; and pain medications Tylenol and Motrin. There are no associated documents of record

---

[5]     In addition, Herrington submitted a "Refusal of Treatment" form dated 6/11/06, ten days after the arrest and uses of force. It is not clear that that document in any way relates to the use of force on 6/1/06. The Nurse marked on the document that the treatment refused was "PPD" [one definition of which is "purified protein derivative of tuberculin"] and "Physical Assessment." The RN's note on the refusal form, under the heading "Potential Consequences Explained," reads as follows: "Yes. Could lead to permanent disability or death."

establishing for what condition(s) the medications were prescribed.

In sum, it is apparent in this case that there exist genuine issues of material fact regarding the nature of the threat which Herrington may have posed to the officers, regarding whether he posed a risk of flight at the time that force was applied, and regarding the nature and extent of the force which was used against Herrington (including how many times Herrington was shocked by taser probes that were shot at him). There are also issues of material fact regarding the cause(s) and extent of plaintiff Herrington's injuries. Under these circumstances, it cannot be determined whether the use of force, including the use of a taser or tasers multiple times was reasonable under the circumstances. Taking the non-movant Herrington's other allegations, as true, including that he was repeatedly kicked while on the ground while under the effects of taser discharges, it does not appear that a reasonable officer could have believed that such force, if true, was objectively reasonable. If this is so, then under such circumstances, other officers who were present while their fellow officers applied such force [taser and/or kicking] would have had a duty to intervene to either prevent or stop its use.

Therefore, on the claims of excessive force and failure to intervene, defendants' motion for summary judgment should be denied.

### III.   <u>ACCESS TO MEDICAL CARE</u>

On the claim that he was denied access to post-use-of-force medical care, there are no allegations specifically naming the individual defendants. He complains that he complained of continuing discomfort in his lower back, face, and chest, that he informed "these officers" that he needed medical attention, and that they had "subjective knowledge" of his request. (DE# 22). A constitutional claim of denied or delayed medical care requires a showing of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs or the unnecessary and wanton infliction of pain. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Brown v. Hughes</u>, 894 F.2d 1533, 1538 (11 Cir.

1990)(unexplained delay on the order of hours, in providing care for a serious and painful broken foot, deemed sufficient to state claim for deliberate indifference; and existence of genuine issue of material fact as to whether a particular correctional officer knew of the inmate's injury during hours in which no medical care was provided, was sufficient to preclude summary judgment with respect to that officer). In this case, the documentation of record indicates that Zeller was a transporting officer who drove Herrington from the arrest scene back to the BBPD and then waited for Spruill; and the "Injured Subject to be Booked" document [Ex.H-1] lists Spruill as a transporting officer. The record on summary judgment does not indicate that Harris, Faine or Crowder had custody of Herrington following his restraint and arrest. As noted, supra, the "Injured Subject to be Booked" report also suggests that Herrington was not seen by a nurse until four hours after the applications of force. Although Zeller's unsworn Supplemental Report states that he inspected Herrington's body, and found only taser marks on his back and shoulder, about which Herrington allegedly did not complain of pain, Herrington has stated under penalty of perjury that he was in pain and asked for medical care and was ignored; and the documentation of record suggests that Herrington had sustained *inter alia* a wound on his forehead that required dressing, and a 4" injury on his shoulder which was sufficiently serious so that three weeks on June 22, 2006, an examining nurse noted that the skin was not intact and that there was risk of infection. It therefore appears that to the extent that the plaintiff has sued for denial of access to medical care, the defendants' motion for summary judgment should be granted as to Harris, Faine and Crowder, but denied as to Zeller and Spruill. *Cf* Brown v. Hughes, supra.

## IV.   LACK OF PROBABLE CAUSE

Although Herrington on one hand states that it is not his intent to attack his conviction and sentence, he asserts on the other hand that the officers lacked probable cause to stop and arrest him. It is amply clear from the record that this claim bears no merit, and the defendants are entitled to judgment in their favor. Herrington stands convicted of the cocaine possession

14

offense which Spruill stated in his PC Affidavit was (based on the
photo distributed by the PBSO) the reason for the continued
questioning of him about his name before he fled on foot. It is
clear that the officers had at least arguable probable cause, if
not actual probable cause to stop and arrest him.[6]

----

[6]    Although a warrantless arrest without probable cause violates a
person's constitutionally protected liberty interest, and forms the basis for
a section 1983 claim, Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11 Cir.
1990); Motes v. Meyers, 810 F.2d 1055 (11 Cir. 1987), the Constitution does
not guarantee that only the guilty will be arrested, Baker v. McCollan, 443
U.S. 137 (1979), and the existence of probable cause is an absolute bar to a
section 1983 action for false arrest, Marx v. Gumbinner, supra, 950 F.2d at
1506, and cases cited therein. Probable Cause "requires more than mere
suspicion, but does not require convincing proof." Bailey v. Board of County
Commiss'rs of Alachua County, 956 F.2d 1112, 1120 (11 Cir. 1992). See also
Rankin v. Evans, 133 F.3d 1425, 1435 (11 Cir. 1998) (quoting State v. Scott,
641 So.2d 517, 519 (Fla. 3 Dist. 1994) ("The facts necessary to establish
probable cause need not reach the standard of conclusiveness and probability
as to the facts necessary to support a conviction")).

The definition of probable cause is well established, see, e.g., United
States v. Elsoffer 671 F.2d 775 (11 Cir. 1982), and it has been long
recognized that probable cause to arrest exists where the facts and
circumstances within an arresting officer's knowledge, and of which he had
reasonably trustworthy information, are sufficient for a man of reasonable
caution to believe that an offense has been or is being committed. Hunter v.
Bryant, 502 U.S. 224, 229 (1991); Draper v. United States, 358 U.S. 307, 311
(1959); United States v. Herzburn, 723 F.2d 773, 775 (11 Cir. 1984); United
States v. Kye Soo Lee, 962 F.2d 430, 435 (5 Cir. 1992). The validity of an
arrest is not vitiated, and an arresting officer is not stripped of
entitlement to qualified immunity on a claim of false arrest so long as there
was probable cause to arrest for some offense. See Lee v. Ferraro, 284 F.3d
1188, 1195-96 (11 Cir. 2002) (validity of an arrest does not turn on whether
the offense for which there was probable cause was announced to the individual
at the time of his/her arrest, nor does it turn on whether the offense was
cited in the officer's arrest report); Stachel v. City of Cape Canaveral, 51
F.Supp.2d 1326, 1331 (M.D.Fla. 1999) ("The claim for false arrest does not
cast its primary focus on the validity of each individual charge; instead we
focus on the validity of the arrest. If there is probable cause for any of the
charges made ...then the arrest was supported by probable cause, and the claim
for false arrest fails") (quoting Wells v. Bonner, 45 F.3d 90, 95 (5 Cir.
1995)).

Moreover, the existence of circumstances in which an arresting officer
has only arguable probable cause, if not actual probable cause, is sufficient
for a defendant officer to be entitled to qualified immunity. See Lee v.
Ferraro, 284 F.3d 1188, 1195 (11 Cir.2002); Scarborough v. Myles, 245 F.3d
1299, 1302 (11 Cir.2001). Arguable probable cause exists where reasonable
officers in the same circumstances, and possessing the same knowledge as the
defendant officer(s) could have believed that probable cause existed to
arrest. Scarborough, supra, 245 F.3d at 1302. In making the determination
whether arguable probable cause exists, the Court must apply an objective
standard, asking whether the officer's actions are reasonable, regardless of
the officer's underlying intent or motivation. Vaughn v. Cox, 264 F.3d 1027,
1036 (11 Cir. 2001); Montoute v. Carr, 114 F.3d 181, 184 (11 Cir. 1997).
Arguable probable cause does not require an arresting officer to prove every
element of a crime or to obtain a confession before making an arrest, because

## V.  <u>CONCLUSION</u>

It is therefore recommended that: 1) the defendants' joint motion for summary judgment (DE# 43) be granted in part, as to Harris, Faine and Crowder on the claim of denied or delayed access to medical care; and that the motion be granted as to all defendants on the allegation of lack of probable cause to arrest; 2) that the defendants' motion for summary judgment otherwise be denied; and 3) that the case remain pending as to all defendants [Zeller, Spruill, Harris, Faine and Crowder] on the claims of excessive use of force, and/or failure to intervene; and remain pending as to Zeller and Spruill on the claim of denied or delayed access to medical care.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: June <u>5</u><sup>th</sup> 2008.

UNITED STATES MAGISTRATE JUDGE

cc:  Levert Herrington, <u>Pro Se</u>
     a/k/a Lavert Herrington
     DC# W00649
     South Bay Correctional Facility
     600 U.S. Highway 27 South
     South Bay, FL 33493

     George P. Roberts, Esquire
     ROBERTS, REYNOLDS, BEDARD & TUZZIO, P.A.
     470 Columbia Drive, Suite 101C
     West Palm Beach, FL 33409

---

to do so would negate the concept of probable cause and transform officers into prosecutors. <u>Scarborough</u>, at 1302-03.

16